[Civ. No. 2501. Fourth Appellate District.—April 4, 1940.]

FARMERS' MUTUAL FIRE INSURANCE COMPANY OF YOLO COUNTY (a Corporation), Appellant, v. THE FIRST RE-INSURANCE COMPANY OF CALIFORNIA, Respondent.

A. G. Bailey for Appellant.

G. L. Aynesworth and Fred D. Johnston for Respondent.

BARNARD, P. J.—This is an action to recover so-called unearned premiums on cancelled reinsurance policies which had been issued by the defendant to the plaintiff.

The plaintiff was organized under the County Mutual Insurance Act of April 1, 1897, as amended, which is now chapter 5 of division 2, part 1, of the Insurance Code. The defendant was organized under the Re-insurance Company Act of 1925, as amended, which is now chapter 6 of the same division and part of the Insurance Code. The plaintiff was one of the organizers and incorporators of the defendant, and thereafter carried certain policies of reinsurance in the defendant company. On May 22, 1937, the plaintiff started to liquidate its insurance business, giving notice to the Department of Insurance. With the consent of the insurance commissioner the date of liquidation of the plaintiff was fixed as May 22, 1937, and the plaintiff ceased to transact business as a county mutual insurance company and permitted its members to transfer their insurance to other companies. The plaintiff returned all of its policies of reinsurance to the defendant, with cancellation notices, and the policies were cancelled. The plaintiff then demanded a return of a proportionate part of the premiums it had paid on these policies.

This demand was refused and this action followed. It was stipulated at the trial that the plaintiff owed the defendant nothing as its share of claims then existing against the defendant reinsurer. From a judgment in favor of the defendant the plaintiff has appealed.

■ As a general rule, the insured is not entitled to cancel a policy and demand the return of a proportionate part of the premium unless that right is conferred by statute or by the contract of the parties. (*Joshua Hendy M. Works* v. *American Steam B. Ins. Co.*, 86 Cal. 248 [24 Pac. 1018, 21 Am. St. Rep. 33].) ■ The appellant contends that its contracts with the respondent were silent on that subject, and that it was, therefore, entitled to a return of premiums covering the remainder of the terms of the cancelled policies, under section 481 of the Insurance Code, which provides that unless the insurance contract otherwise provides a person insured is entitled, if the policy is cancelled, to a return of a proportion of the premium corresponding with the unexpired time. The sole question presented on this appeal is whether section 481 of the Insurance Code is here applicable.

Section 37 of the Insurance Code reads: ''Provisions of this code relating to a particular class of insurance or a particular type of insurer prevail over provisions relating to insurance in general or insurers in general.'' Under section 2, provisions of the Insurance Code are to be construed as continuations of then existing statutory provisions on the same subject matter and not as new enactments. The provisions for a return of premium upon cancellation of a policy contained in section 481 of the Insurance Code have been in effect in substantially the same form since 1872. When enacted, and at least for many years thereafter, they were intended to apply to the ordinary contract between an insured and an insurer where the insured had nothing to do with the insurer except as arising from his contract of insurance. Many years later, a special act was enacted permitting the organization of county mutual fire insurance for the purpose of furnishing mutual fire insurance to their insured members. Still later, in 1925, another special act permitted the organization of county mutual fire reinsurer companies for the purpose of furnishing reinsurance to its members, who must be county mutual fire insurance companies organized under the other act. Both of these special acts are now a part of the In-

surance Code. The reinsurance act permits five or more of the county mutual companies to incorporate a reinsurance company for the purpose of furnishing mutual reinsurance to its members. Section 7080 speaks of the member companies who may organize the reinsurance company as "insurers operating under chapter 5 of this part." Section 8030 provides that any other county mutual fire insurer may become a member of such reinsurer. Section 8031 provides that upon becoming a member of such reinsurer the county mutual insurer shall give its written obligation to pay its *pro rata* share of expenses and losses, and shall also "at the time of effecting the reinsurance" pay certain other charges. Article VI of chapter 6 of the Insurance Code provides for the making of assessments by the reinsurer upon the insurer members, but these may only be in proportion to the policies of reinsurance. These and other provisions indicate that membership in the reinsurance company is based upon the giving of the written obligation referred to and the taking out of policies of reinsurance. Section 8031 provides that the obligation to pay its *pro rata* share of the expenses and losses given by the insurer members shall apply during the time for which their respective policies are written. Sections 9010 to 9012 are found in article VII, which is headed "Cancellation of Membership". They provide that any member of such reinsurer may cancel any policy of reinsurance at any time by taking certain named steps, and further provide that the reinsurer may cancel any policy by giving the member ten days' written notice and returning to it any excess of premium as measured by certain rules.

Section 481 was originally adopted for the benefit of an insured who was not also a part of the insurer. It was, however, not intended to give to such an insured the arbitrary right of canceling his policy at any time and demanding a proportionate return of the premium paid. That section, as it formerly stood in the Civil Code, was interpreted in *Joshua Hendy M. Works* v. *American Steam B. Ins. Co.*, *supra*, as meaning that an insured was entitled to a proportionate return of premium only when he had a legal reason for canceling the policy. Reinsurance, as later provided for, differs materially from general insurance involving merely an insurer and an insured, and is a particular class of insurance with a particular type of insurer, the insured being

also a part of the insurer. Section 8010 of the Insurance Code provides that such a reinsurance company may carry on a reinsurance business "as provided by this chapter". It hardly seems possible that it was intended by this act to make the provisions now included in section 481 applicable to this type of insurance, giving the insurer members the right to arbitrarily withdraw and secure a return of premiums, and thereby giving to such insurer members an advantage much greater than that enjoyed by the insured under a general insurance policy. Such an insurer member is not only an insured under the policy of reinsurance, but is also a component part of the reinsurance company which issues the policy. The insurer member is liable for expenses and losses throughout the life of its reinsurance policies and it has obligations to the reinsurance company and its members in addition to the mere matter of paying premiums on its reinsurance.

The act permitting the formation of such reinsurance companies is not entirely silent on the matter of the return of premiums on the cancellation of reinsurance policies. While it provides that the insurer member may cancel its policies at any time it says nothing about a return of premiums paid. But in the same article and on the same subject it provides for a return of premiums if the reinsurer shall cancel the policy. This seems to indicate an intention that no such return of the premium is to be allowed where the insurer member cancels the policy. The appellant argues that there would be no benefit to the insurer member in canceling the policies if a return of premium was not then provided for, but this is not the case since the insurer member by canceling the policies receives the benefit of ending its liability for future expenses and losses suffered by all members of the reinsurance company, which liability was, according to its membership contract, to continue throughout the life of its policies. It seems more reasonable to conclude that it was the intention of the legislature, in adopting this special act, to provide that no premium should be returned when the policies were cancelled by the insurer member through whose cooperation the reinsurer had incurred other obligations and that, under section 37, the special act relating to a particular class of insurance and a particular type of insurer prevails over section

481, which relates to insurance in general and insurers in general.

A further consideration is that the applications for reinsurance and the reinsurance contracts issued to the appellant specifically provide that the by-laws of the respondent are a part of the contract of insurance. Section 4 of article VIII of these by-laws reads as follows:

"Whenever any member company shall, for any cause or through any method, cease to be a member of said First Re-Insurance Company, the liability of such member company theretofore incurred shall be in no way affected or discharged by the fact that such county fire insurance company shall have ceased to be a member of said First Re-Insurance Company; and no member company shall be permitted to withdraw as a member until it shall have paid and discharged in full, all of its liability to said First Re-Insurance Company. Whenever any member company shall cease to be a member of said First Re-Insurance Company, any re-insurance carried by said First Re-Insurance Company for such member company may be cancelled and premiums in re-insurance thus cancelled may be adjusted as provided in Section 16 of Chapter 195 of the Statute of 1925 of the State of California; (being the statute under which said First Re-Insurance Company was organized) but the return to any member company of any premium upon any insurance thus cancelled, shall be optional with this First Re-Insurance Company, and shall be determined, by the Secretary with the approval of a three-fourths of the members of the Board of Directors."

The appellant argues that although it had, with the permission of the insurance commissioner, ceased to transact business as a county mutual insurance company it was still a member company of the respondent because it had taken no steps for dissolution and was still a corporation entitled to do business in this state and, therefore, that section 4 of article VIII of these by-laws has no application here. This by-law applies to any member company which shall "for any cause or through any method cease to be a member of said First Re-Insurance Company". This seems to be broad enough to cover the appellant, which withdrew from the reinsurance company through the method of canceling its policies and retiring from the insurance field after obtaining the permission of the insurance commissioner, who fixed the date of appellant's

liquidation as May 22, 1937. We think a member of this re-insurance company, within the meaning of the act permitting the organization of such a company, is a member insurer company which remains liable for its proportion of the expenses and losses which are to be expected. When a member company ceases its insurance business, cancels its policies and terminates its liabilities and obligations as a member of the reinsurance company, we think it has ceased to be a member of such reinsurance company within the meaning of the quoted by-law.

For both of the reasons herein set forth we conclude that section 481 of the Insurance Code is not controlling under the circumstances here appearing. It follows that the appellant is not entitled to a return of the premiums in question under either statutory or contractual provisions.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.